FILED

2014 AUG 20 PM 12: 50

CASE UNSEALED PER ORDER OF COURT

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: /s/ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

June 2014 Grand Jury

| UNITED STATES OF AMERICA, | Case No. 14 CR 2354-BAS |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | Title 18, U.S.C., Secs. 1341 and 1346 - Mail Fraud; Title 18, U.S.C., Sec. 2 - Aiding and Abetting; Title 18, U.S.C., Sec. 981(a)(1)(C) and Title 28, U.S.C., Sec. 2461 - Criminal Forfeiture |
| SEAN ENRIQUE O'KEEFE, | |
| Defendant. | |

The Grand Jury charges:

**INTRODUCTORY ALLEGATIONS**

At all times relevant:

1. Defendant SEAN E. O'KEEFE (hereinafter referred to as "O'KEEFE") was an attorney licensed in the state of California to practice law. O'KEEFE owned and operated "The Law Offices of Sean E. O'KEEFE," in San Diego. O'KEEFE was admitted to the California State Bar in 1984, and has been a certified specialist in the area of California Workers' Compensation Law since 1998.

2. O'KEEFE represented clients in their workers' compensation cases, helping to manage their medical care, interacting with their insurers, and representing them before the Worker's Compensation Appeals Board.

VHC:lml:San Diego:8/20/14

3. The California Workers' Compensation System ("CWCS") required that employers in California provide workers' compensation benefits to their employees for qualifying injuries sustained in the course of their employment. The CWCS was regulated by the California Labor Code, the California Insurance Code, and the California Code of Regulations, and was administered by the California Department of Industrial Relations.

4. CWCS benefits were administered by the employer, an insurer, or a third party administrator. The CWCS required claims administrators to authorize and pay for medical care that was "reasonably required to cure or relieve the injured worker from the effects of his or her injury," and included medical, surgical, chiropractic, acupuncture, and hospital treatment.

5. The State Compensation Insurance Fund ("SCIF") was a quasi-governmental organization which operated as a private company and was considered the insurer of last resort, playing a key role in guaranteeing the availability of affordable workers' compensation insurance in California.

6. Injured employees could retain attorneys to represent them in their workers' compensation cases. These attorneys were called "applicants' attorneys." They were paid a fee out of the applicant's recovery. According to the California Department of Industrial Relations, the applicant attorney's job included protecting the rights of the client, planning a strategy for the client's case to obtain all the benefits owed to the client, advocating for the client, gathering information to support the client's claim, and representing the client before a workers' compensation judge. It was not part of the

applicant attorney's job to seek or accept kickbacks to the attorney for referrals to particular surgeons or hospitals.

7. Worker's compensation attorneys often recommended that their worker's compensation clients see certain doctors. Those doctors, in turn, recommended that the clients be treated at the hospital or facility at which they had admitting privileges and where they performed surgeries. Insurance providers and SCIF paid the hospitals and surgeons for medical services provided to workers' compensation patients.

8. Attorneys owed a fiduciary duty to their clients. This duty required that attorneys act in their client's best interests, and not for their own professional, pecuniary, or personal gain. Accepting kickbacks without the client's consent was a breach of the attorney's fiduciary duty.

9. Michael Drobot (charged elsewhere), (hereinafter "Drobot") owned and operated Pacific Hospital of Long Beach in Long Beach, California, as well as other entities.

10. "Dr. A," "Dr. B," "Dr. C," and "Dr. D." were spine surgeons who practiced in San Diego and other locations.

11. "M.R.," "A.S.," "E.D.L.T.," "T.M.," "O.E.L.," "S.N.B.," "L.H.," and "R.A." were injured workers who retained O'KEEFE for assistance in pursuing workers' compensation benefits.

### Counts 1-15

### MAIL FRAUD

[18 U.S.C. § 1341 & 1346]

12. The allegations contained at paragraphs 1 through 11 are realleged and incorporated by reference.

//

3

13. Beginning on an unknown date, but no later than April 2011, and continuing through at least June 2014, within the Southern District of California and elsewhere, defendant SEAN ENRIQUE O'KEEFE and others knowingly and with the intent to defraud, devised a material scheme to defraud, that is, to deprive O'KEEFE's clients of their intangible right to his honest services as their attorney, and to obtain money and property from employers, insurance carriers, and the State Compensation Insurance Fund by means of material false and fraudulent pretenses, representations, promises, and omissions.

### MANNER AND MEANS

14. The scheme was carried out using the following manner and means, among others:

   a. O'KEEFE entered into agreements with Drobot and others to obtain kickbacks for referring O'KEEFE's law clients to specific doctors, including Drs. A, B, C, and D, for spinal surgery.

   b. Based on the fraudulent offer of kickbacks, O'KEEFE referred his clients with spinal injuries to Drs. A, B, C, and D for evaluation and surgery, in violation of his fiduciary duty to his clients.

   c. O'KEEFE concealed from his clients the kickback payments he received from Drobot and others, in violation of his fiduciary duty to his clients.

   d. O'KEEFE disguised and concealed the illegal kickback scheme by instructing Drobot to pay the kickbacks to employees of O'KEEFE's law firm, to whom O'KEEFE owed compensation, and to misrepresent these employees as working for Drobot or one of Drobot's companies.

//

e. O'KEEFE disguised and concealed the illegal kickback scheme by entering into sham legal retainer agreements with Drobot and others.

f. O'KEEFE generated fraudulent "legal invoices" to Drobot and others for services he and his firm never provided in an effort to disguise and conceal the illegal kickbacks.

g. The corrupt doctors and hospitals that treated O'KEEFE's clients submitted bills, reports, and other documents, to SCIF and other insurance carriers via U.S. mail, and fraudulently concealed the illegal kickbacks from SCIF and other insurance carriers in those mailings.

h. O'KEEFE concealed his illegal kickback scheme in communications he sent, or caused to be sent, via U.S. mail to his legal clients, SCIF and other insurance carriers.

i. O'KEEFE regularly signed and sent to his clients, to insurance companies, and to SCIF a "Statement in Compliance with Labor Code § 4906(G)" that he "[had] not offered, delivered, received, or accepted any rebate, refund, commission, preference, patronage, dividend, discount, or other consideration, whether in the form of money or otherwise, as compensation or inducement for any referred examination or evaluation."

j. O'KEEFE caused SCIF and other insurance carriers to pay for the surgeries procured through kickbacks by checks sent through U.S. mail.

**EXECUTION OF THE SCHEME**

15. On or about the dates listed below, within the Southern District of California and elsewhere, defendant O'KEEFE, for the purpose of executing the above-described scheme to defraud, and

attempting to do so, caused the following to be placed in a post office and authorized depository for mail matters to be delivered by the United States Postal Service and private and commercial interstate carriers:

| Count | Date | Sender | Recipient | Description |
|---|---|---|---|---|
| 1 | 5/2/2011 | O'KEEFE Law Firm | Patient M.R. | Letter providing notice that patient M.R. was selecting Dr. B as M.R.'s primary treating physician |
| 2 | 5/2/2011 | O'KEEFE Law Firm | Patient A.S. | Letter providing notice that patient A.S. was selecting Dr. B as A.S.'s primary treating physician |
| 3 | 5/5/2011 | O'KEEFE Law Firm | SCIF | Letter notifying SCIF that patient T.M. was electing Dr. A as T.M.'s treating physician |
| 4 | 6/20/2011 | O'KEEFE Law Firm | Lumbermens Underwriting | Letter providing notice that patient E.D.L.T. was selecting Dr. B as E.D.L.T.'s treating physician |
| 5 | 9/20/2011 | O'KEEFE Law Firm | SCIF | Letter notifying SCIF that patient T.M. was electing Dr. B as T.M.'s secondary treating physician |
| 6 | 10/6/2011 | Dr. B's office | SCIF | Surgical report and recommendation by Dr. B concerning patient A.S. |
| 7 | 4/3/2012 | O'KEEFE Law Firm | Patient L.H. | "Statement in Compliance with Labor Code §4906(G)" signed by O'KEEFE regarding patient L.H. |
| 8 | 11/12/2013 | O'KEEFE Law Firm | Zenith Insurance Co. | Letter providing notice that patient O.E.L. was electing Dr. C as O.E.L.'s treating physician |

| Count | Date | Sender | Recipient | Description |
|---|---|---|---|---|
| 9 | 11/27/2013 | O'KEEFE Law Firm | SCIF | Letter providing notice that patient O.E.L. was electing Dr. D as O.E.L.'s treating physician |
| 10 | 11/27/2013 | O'KEEFE Law Firm | Patient O.E.L. | Letter notifying patient O.E.L. that O'KEEFE's office had scheduled an initial appointment for O.E.L. with Dr. D |
| 11 | 1//3/2014 | O'KEEFE Law Firm | SCIF | Letter notifying SCIF that if it failed to authorize Dr. D to treat patient O.E.L., O'KEEFE's firm would file a petition for sanctions for unreasonable delay in medical treatment |
| 12 | 2/1/2014 | O'KEEFE Law Firm | American Claims Management | Letter objecting to the insurance company's denial of treatment recommendations for patient S.N.B. |
| 13 | 2/11/2014 | Hospital in San Diego | Broadspire Worker's Comp. | Claim for payment for patient R.A.'s spinal surgery, including invoices totaling $1 million and supporting reports by Dr. C |
| 14 | 4/14/2014 | O'KEEFE Law Firm | Patient S.N.B. | "Statement in Compliance with Labor Code §4906(G)" signed by O'KEEFE regarding patient S.N.B. |
| 15 | 4/14/2014 | O'KEEFE Law Firm | American Claims Management | Letter providing notice that patient S.N.B. was electing Dr. D as S.N.B.'s treating physician |

All in violation of Title 18, United States Code, Sections 1341, 1346, and 2.

//

//

7

## FORFEITURE ALLEGATIONS

16. The allegations contained in paragraphs 1 through 15 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461.

17. Upon conviction of Counts 1 through 15, defendant SEAN ENRIQUE O'KEEFE shall forfeit to the United States, any real or personal property constituting, derived from, or traceable to the proceeds that the defendant(s) obtained directly or indirectly as a result of the offense(s), pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

18. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;
    b. has been transferred or sold to, or deposited with, a third party;
    c. has been placed beyond the jurisdiction of the Court;
    d. has been substantially diminished in value; or
    e. has been commingled with other property which cannot be subdivided without difficulty;

//
//
//
//
//
//

1 it is the intent of the United States, pursuant to Title 21,
2 United States Code, Section 853(p), made applicable herein by
3 Title 28, United States Code, Section 2461(c) and Title 18,
4 United States Code, Section 982(b), to seek forfeiture of any other
5 property of the defendant up to the value of the said property
6 described above as being subject to forfeiture.

DATED: August 20, 2014.

A TRUE BILL:

_____
Foreperson

LAURA E. DUFFY
United States Attorney

By: _____
VALERIE H. CHU
Assistant U.S. Attorney

By: _____
FRED SHEPPARD
Assistant U.S. Attorney

9